# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| JOHN P. ZURATT, | : | No. 3:09cv2042 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| NORWEGIAN TOWNSHIP, | : | |
| Defendant | : | |

## MEMORANDUM

Before the court is defendants' motion for summary judgment. Having been fully briefed and argued, the matter is ripe for disposition.

**Background**

This case arises out of Plaintiff John P. Zuratt's employment as a police officer in Defendant Norwegian Township ("the Township"), Pennsylvania and the Township's decision to disband the force for which he worked. Plaintiff began working for the Defendant Township as a part-time patrol officer in 1986. (Defendant's Statement of Undisputed Material Facts (Doc. 14) (hereinafter "Defendant's Statement") at ¶ 1). In the late 1980s, plaintiff obtained full-time employment with the Township and eventually was promoted to patrol Sergeant. (Id. at ¶ 2).

During part of his employment with the Township, plaintiff reported primarily to Township Supervisor Robert Kirwan. (Id. at ¶ 3). Plaintiff provided Kirwan daily and weekly reports. (Id.). According to plaintiff, this relationship existed only in recent

years, since Kirwan was only recently elected to the Board of Supervisors. (Plaintiff's Counterstatement of Material Facts (Doc. 17) (hereinafter "Plaintiff's Counterstatement") at ¶ 3). At the time of the events here in question, Kirwan served as plaintiff's immediate supervisor. (Defendant's Statement at ¶ 4). Kirwan addressed matters such as plaintiff's scheduling, vacation and overtime. (Id.). Plaintiff usually worked a forty-hour week during 2006 and 2007. (Id. at ¶ 5). He occasionally worked overtime to complete an investigation, but this practice was not routine. (Id.).

Plaintiff was the only police officer employed by the Township in 2007. (Id. at ¶ 6). The Pennsylvania State Police responded to 911 calls when plaintiff was not on duty. (Id. at ¶ 7). The State Police have jurisdiction in Norwegian Township for all criminal matters. (Plaintiff's Counterstatement at ¶ 7). Troopers also attended events at Township schools and responded to calls at those schools when plaintiff was off-duty. (Id.). State Police also sometimes handled non-reportable minor accidents. (Id.). Plaintiff is not aware if the State Police also provided routine traffic or patrol services when he was not working. (Defendant's Statement at ¶ 8). The parties agree that the Board of Supervisors were aware in 2007 that the State Police had not responded to many incidents in the township over the previous five to eight years. (Id. at ¶ 9). Plaintiff, insists, however, that the State Police were required to respond to such incidents, as they have jurisdiction in the Township. (Plaintiff's Counterstatement at ¶ 9).

2

In the years preceding dissolution of the police force, plaintiff had frequently informed the Township that he needed assistance to perform his duties. (Defendant's Statement at ¶ 10). Plaintiff testified that his responsibilities were extensive, since he was charged with investigating criminal incidents at the Township's three malls and policing accidents on the highways within the Township. (Id. at ¶ 11). The Township hired two part-time officers in response to these complaints, but they did not stay on the job very long. (Id. at ¶ 12). Plaintiff believed these part-time officers only wanted to work at times convenient for them, not when the Township needed them. (Id. at ¶ 13). The parties disagree over whether plaintiff asked the Board of Supervisors to hire additional officers. (Id. at ¶ 14; Plaintiff's Counterstatement at ¶ 14). They also disagree over whether plaintiff ever requested additional help from various supervisors. (Defendant's Statement at ¶¶ 14-15; Plaintiff's Counterstatement at ¶¶ 14-15).

According to the reports plaintiff submitted to the Board of Supervisors, the Township experienced between 150 and 200 criminal incidents per month. (Defendant's Statement at ¶ 16). These numbers include only those incidents that occurred on plaintiff's eight-hour shift. (Id.). Supervisors expressed concern about the level of crime in the Township, particularly during the sixteen hours of the day during which plaintiff was off-duty and no officers were stationed in the Township. (Id.). They had previously attempted to hire part-time officers, but were not pleased with the results, and now attempted to develop another means of providing the

3

Township with the required police coverage. (Id. at ¶ 17). One Supervisor, Leo Grace, insisted that the Township maintain a full-time police department. (Id. at ¶ 18). Beginning in February 2007, the Supervisors explored the possibility of expanding the department's size. (Id. at ¶¶ 18-20).

Supervisor Kirwan testified that the Township operated on a fixed budget, which was dependent on property taxes. (Id. at ¶ 21). Those taxes brought in yearly revenues of between $150,000 and $200,000, and the Supervisors attempted to build the Township's yearly budget for salaries and other expenses around this income. (Id.). The Supervisors bore these numbers in mind as they explored expansion of the police department. (Id. at ¶ 22). Looking at the police departments in surrounding communities like Minersville, the Board concluded that expanding the police force would require hiring five to six officers. (Id.). The cost of such an expansion would have exceeded the Township's entire yearly budget, and the Board found such expense impossible. (Id.).

The Supervisors sought ways to provide police coverage for the Township through arrangements with other agencies. They explored the possibility of regionalization of the police force, but concluded that such expansion was unrealistic. (Id. at ¶ 23). Supervisors had discussed regionalization with the City of Pottsville in 2002 or 2003, but had no success. (Id. at ¶ 24). Similar efforts in 2004 and 2005 with Minersville Borough, Branch Township, Tremont Borough, Tremont Township, Cass Township and Reilly Township had likewise come to no end. (Id. at

4

¶ 25). Finally, Supervisor Kirwan spoke with State Police Sergeant Stein in the fall of 2007. (Id. at ¶ 26). Stein informed Kirwan that the State Police could provide twenty-four hour coverage for the Borough, seven days a week. Defendant claims that the Supervisors did not want to accept coverage from the State Police without ensuring that plaintiff had a job with the Township. (Id. at ¶ 27). They therefore decided to offer him a position with the Township Street Department if they disbanded the police department. (Id.). Plaintiff disputes the timing and nature of any offer the Township subsequently made him. (Plaintiff's Counterstatement at ¶ 27).

On December 1, 2007, plaintiff met with Robert Kirwan and Albert Evans, the township solicitor, to discuss disbanding the police department. (Defendant's Statement at ¶ 28). Defendants claim they offered plaintiff two positions. (Id. at ¶¶ 29-30). Plaintiff could continue to work for the township handling paperwork and court duties until he became eligible for a pension in February 2008. (Id. at ¶ 29). Alternatively, he could work as a Road Crew Chief on the Township's street department. (Id. at ¶ 30). Plaintiff did not accept an employment offer at this time. (Id. at ¶ 34). The parties dispute whether Kirwan set a deadline for plaintiff to accept this position. (Id. at ¶¶ 31-32; Plaintiff's Counterstatement at ¶¶ 31-32). Plaintiff insists that he called Solicitor Evans on February 22, 2008 and Leo Grace on February 25, 2008 to tell them he wanted the Road Department job. (Plaintiff's Counterstatement at ¶ 32). They allegedly told him he would receive an answer by

5

March 1, 2008. (Id.). He did not receive an answer by that date, and on March 3, 2008, plaintiff's wife asked about the position at a Board of Supervisors' meeting. (Id.). Supervisor Stanley Petchulis told her that the Supervisors would review and discuss plaintiff's request. (Id.).

The Supervisors discussed disbanding the police department at their meeting on December 3, 2007. (Id. at ¶ 35). During this meeting, the Supervisors stated that they had based their decision to disband the department on their desire to have twenty-four hour coverage seven days a week. (Id. at ¶ 36). Supervisor Kirwan testified that the decision to disband the department also came because the Township lacked the financial resources to support an adequate department. (Id. at ¶ 37). With the number of incidents reported, the Township needed more coverage than one full-time officer could provide, but lacked the resources to provide for additional officers. (Id.). Plaintiff did not accept a position as Road Crew Foreman during this Board of Supervisors meeting. (Id. at ¶ 38). The Board voted to disband the police department at a meeting on December 27, 2007. (Id. at ¶ 39). Plaintiff did not have any discussions with the Board at any time between these two meetings. (Id. at ¶ 40).

At their December 27, 2007 meeting, Supervisors discussed whether plaintiff would retire when he reached age 55. (Id. at ¶ 42). They assumed he would. (Id.). Statements made at the meeting indicate that the Board expressed some desire to provide plaintiff with an opportunity to keep working until he was 55. (Plaintiff's

6

Counterstatement at ¶ 43). Defendant denies that plaintiff's eligibility to retire and collect a pension in February 2008 played a role in their decision to disband the police department. (Defendant's Statement at ¶ 43). Defendants eliminated the Norwegian Township Police Department effective January 1, 2008. (Id. at ¶ 46). While defendant insists that plaintiff testified he had no idea why the Township eliminated his department, plaintiff contends that the Township acted to remove him from his position before he became eligible for retirement. (Id. at ¶ 47; Plaintiff's Statement at ¶ 47).

Plaintiff did not have any discussions with the Board of Supervisors regarding the street-crew position in the first month after Supervisors disbanded the Police Department. (Defendant's Statement at ¶ 48). On January 29, 2008, Thomas P. Williams completed an application for full-time crew chief and foreman, the street-crew position that had been discussed with plaintiff. (Id. at ¶ 50). Willliams was born on June 19, 1949. (Id. at ¶ 51). Plaintiff was born February 27, 1953. (Id. at ¶ 52). In February 2008, plaintiff claims he contacted Supervisor Leo Grace and B.J. Evans to express interest in the street-crew job. (Id. at ¶ 53; Plaintiff's Statement at ¶ 53). Grace has no recollection of any conversation about this job. (Defendant's Statement at ¶ 55). Plaintiff contends he never received a satisfactory answer about his status for the job. (Id. at ¶ 57). Plaintiff spoke with Kirwan in March 2008. (Id. at ¶ 57). Kirwan informed him the position had been filled. (Id.). Williams began working for the Township as Road Crew Chief on April 7, 2008. (Id. at ¶ 58).

7

Plaintiff began collecting pension benefits in February of 1955, once he turned 55. (Id. at ¶ 60). After the Township dismantled the police department, the State Police began providing full-time law enforcement services to the Township. (Id. at ¶ 61). The State Police still provide this service. (Id. at ¶ 62).

Plaintiff filed a complaint (Doc. 1) against the Township on October 21, 2009. The complaint alleges that the Township discriminated against plaintiff on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., and the Pennsylvania Human Relations Act (PHRA), 42 P.S. § 951, et seq. This discrimination allegedly came when the Towship eliminated its police department and when the Township failed to hire plaintiff for an open street-crew position. After defendant answered the complaint, the parties engaged in discovery. The defendant filed a motion for summary judgment at the end of the discovery period. The parties then briefed the issue, and the court held argument, bringing the case to its present posture.

**Jurisdiction**

As plaintiff brings the case pursuant to the ADEA, 29 U.S.C. § 621, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claim pursuant to 28 U.S.C. § 1367.

**Legal Standard**

8

The case is before the court on defendant's motion for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

Defendant seeks summary judgment on plaintiff's claims. As a preliminary matter, the court notes that the same legal standards apply to plaintiff's claims brought pursuant to the ADEA and the PHRA. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (concluding that in a case where plaintiff brought both ADA and PHRA claims "we will only discuss [plaintiff's] ADA claim because our analysis of an ADA claim applies equally to a PHRA claim."). The court will therefore address both claims as if they were brought under the ADEA.

The Age Discrimination in Employment Act (ADEA) prohibits "discrimination against an individual over age 40 with respect to 'compensation, terms, conditions, or privileges of employment, because of an individual's age.'" Billet v. Cigna Corp., 940 F.2d 812, 816 (3d Cir. 1991) (quoting 29 U.S.C. § 623(a)). To recover under the act, "'a plaintiff must prove by a preponderance of the evidence that age was the determinative factor in the employer's decision' at issue." Id. (quoting Bartek v. Urban Redevelopment Authority of Pittsburgh, 882 F.2d 739, 742 (3d Cir. 1989)). The defendant contends that plaintiff cannot offer any direct evidence of age discrimination. Defendant also argues that plaintiff does not have any indirect evidence for his claims. The court will address each argument in turn.

### i. Direct Evidence

Defendant first argues that plaintiff lacks direct evidence of age discrimination. A plaintiff may prove age discrimination by supplying "direct evidence" of such illegal

10

activity. See Glanzman v. Metro Mgt. Corp., 391 F.3d 506, 512 (3d Cir. 2004) (holding that in age discrimination cases, "if direct evidence is used, the proponent of the evidence must satisfy the test laid out in Price Waterhouse [ v. Hopkins, 490 U.S. 228 (1989)] in order to prove a violation of the ADEA [citations omitted].). "To be 'direct' for purposes of the Price Waterhouse test, evidence must be sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's age in reaching their decision. [citations omitted] ." Id. In other words, a plaintiff "must produce evidence of discriminatory attitudes about age that were causally related to the decision to fire [him]." Id. Once plaintiff presents such direct evidence, "'the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered . . . [his] age.'" Id. (quoting Fakete v. Aetna, 308 F.3d 335, 338 (3d Cir. 2002)).

Defendant argues that no evidence establishes that any member of the Board of Supervisors demonstrated a discriminatory attitude about age in deciding to eliminate plaintiff's position in the Borough. To the contrary, defendant argues that the evidence indicates that the decision to eliminate the police force came from the Supervisors evaluation of the efficient use of the Borough's resources. Even after deciding to disband the police force, the Supervisors attempted to provide plaintiff with a different position within the Borough. Plaintiff responds that at the December 27, 2007 Board of Supervisors meeting, Supervisor Kirwan related the decision to terminate the police department was based in part on plaintiff's age. Kirwan stated

11

that "our impression was that Sergeant Zuratt was retiring at 55 and we went ahead and gave him the opportunity to stay on board until he was 55 years old," by offering him a street crew job, though plaintiff had decided not to accept the position. Kirwan also related that in a 2004 contract the Township had lowered the pension and retirement age to 55. Plaintiff had inquired in early 2007 whether the change in retirement age had been established. The Township informed him in March 2007 that the change had been made, and thus assumed that Zuratt would retire in February 2008. Plaintiff contends that a reasonable juror could conclude defendant attempted to eliminate plaintiff from the workforce by eliminating the police department, and thus avoid him becoming eligible for a pension.

The court finds that no evidence exists by which a jury could conclude that defendant placed a substantial negative reliance on plaintiff's age in deciding to eliminate the police department. See Fakete, 308 F.3d at 339-40 (finding direct evidence of discrimination when employer told fired employee that the company was looking for younger, single people and an older employee would not enjoy working for the company, since a jury could conclude that the employer "viewed [plaintiff] as a less desirable employee because of his age."). There is evidence that the Township knew plaintiff was nearing retirement age when making the decision to eliminate the police department. There is also evidence that the Township thought plaintiff planned to retire in February 2008. There is no evidence, however, that indicates that the Township eliminated the police department because of plaintiff's

12

age and pending retirement. Indeed, all parties acknowledge that the Township offered plaintiff another position rather than terminate his employment altogether. As such, no reasonable juror could conclude that direct evidence of age discrimination in the Township's decision to eliminate the police department.

The court also finds that there is no direct evidence that defendant failed to provide plaintiff with the street-crew position on the basis of his age. There is no dispute that defendant offered plaintiff that position. The dispute on that matter is over whether plaintiff accepted the position before the defendant awarded it to another, older employee.

### ii. Indirect Evidence

Plaintiff might also prove his case at trial through indirect evidence. Courts have concluded that, lacking direct evidence of discrimination, a plaintiff seeking recovery under the ADEA must first make out a prima facie case by "showing (1) he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination." Armruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Once the plaintiff establishes this prima facie case, "the defendant has the burden of producing evidence that it had 'a legitimate, nondiscriminatory reason for the discharge.'" Fakete, 308 F.3d at 338. If the defendant produces such evidence, the burden shifts back to the plaintiff, who must provide "evidence 'from which a

13

factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Defendant argues that plaintiff cannot make out a prima facie case with respect to his police-officer position. Defendant eliminated the Police Department, and thus plaintiff cannot put forth evidence that he was replaced by a sufficiently younger person. Plaintiff acknowledges that he was not replaced, but argues that the court should apply the standards articulated in so-called "reduction in force" cases to these circumstances. Courts have held that "to present a prima facie case raising an inference of age discrimination in a reduction of force situation, the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger." Anderson v. Conrail, 297 F.3d 242, 250 (3d Cir. 2002). The court agrees that plaintiff cannot make out a *prima facie* case on these terms, since he does not have evidence that anyone replaced him.

Still, plaintiff argues that the court should find a prima facie case here, because "[t]here is no hard-and-fast rule covering what a plaintiff must show in order to establish the *McDonnell Douglas* prima facie showing." Fasold v. Justice, 409 F.3d 178, 185 n.10 (3d Cir. 2005). Instead, "'the precise elements of a plaintiff's prima facie case may vary with the particular circumstances.'" Id. (quoting Waldron

14

v. SL Indus., Inc., 56 F.3d 491, 494 n.3 (3d Cir. 1995)). The court has "never held that the fourth element of the prima facie case should be relaxed *only* when there is a reduction of force." Pivirotto v. Innovative Sys., 191 F.3d 344, 357 (3d Cir. 1999). Instead, the court has found that "the fourth element [of a prima facie case] must be relaxed in certain circumstances." Torre v. Casio, Inc., 42 F.3d 825, 831 (3d Cir. 1994). Moreover, meeting the elements of a *prima facie* burden is not intended to be particularly difficult, since "[t]he *prima facie* phase of discrimination litigation 'merely serves to raise a rebuttable presumption of discrimination by 'eliminating the most common nondiscriminatory reasons for the employers' treatment of a plaintiff.'" Doe v. C.A.R.S. Prot. Plus, 257 F.3d 358, 365 (3d Cir. 2008).

Plaintiff contends that there is evidence by which a jury could conclude that his age was the reason defendant decided to eliminate his position. Plaintiff was in the protected age class, and the defendant saved money by eliminating his position and maintaining the employment of other, younger workers employed by the Township. A jury could reasonably view this evidence as establishing that plaintiff was treated differently from those not in the protected class, and plaintiff insists that such evidence is sufficient to meet the fourth element of a prima facie case. The court agrees. Given the evidence summarized above, a jury could find that plaintiff was treated differently from other Township employees because of his age. Since the plaintiff's burden on such matters is light, the court finds he has satisfied that burden and will employ the rest of the balancing test.

Defendant also argues, however, that plaintiff cannot make out a prima facie case in relation to his failure to obtain the street-department position. The defendant does not dispute that plaintiff sought that position and did not receive it. The defendant also agrees that plaintiff was older than forty, and thus within the class protected by the statute. Thomas P. Williams, who received the job instead of plaintiff, however, was actually three years older than the plaintiff. As such, plaintiff cannot demonstrate that the person who received the position was a person sufficiently younger than him to permit an inference of discrimination. The court agrees with the defendant on these grounds, and finds that plaintiff cannot make out a *prima facie* case on this portion of his claim. Plaintiff therefore cannot prevail on the claim relating to the street-crew position.

Still, defendant must meet its burden of persuasion on plaintiff's claim related to his police job. Defendant argues that it has provided legitimate, non-discriminatory reasons for the decision to eliminate the police force, thus satisfying its burden under the McDonald-Douglass test. The court agrees that the Township's stated reasons for eliminating the police department–that the department was expensive, did not provide full coverage with one officer, and that the Township could not afford to pay for necessary additional staff–represent legitimate, non-discriminatory reasons for eliminating the police department and plaintiff's job. The defendant has provided evidence to support these reasons, and the court recognizes that municipalities must frequently make difficult decisions about using resources

16

and employing personnel.  If a jury were to credit these stated reasons as defendant's motivation, defendant would meet its burden in this instance.

The burden now shifts to the plaintiff to produce "evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Fakete, 308 F.3d at 388 (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  Plaintiff disputes the defendant's proffered reasons on two grounds.  First, he points to statements from Kirwan which he alleges demonstrates that the Board of Supervisors was more concerned about eliminating plaintiff's position before he could take retirement than with providing the full coverage they claimed to seek.  Plaintiff contends that a jury could find by this evidence that the real reason for the employment decision was based on the desire to avoid paying for plaintiff's retirement, not a desire to save money.  Second, plaintiff contends that the Township did not get better police coverage by disbanding the department, but worse.  He contends that the Township lost forty hours a week of coverage by eliminating his job, and that coverage from the State Police could not replace his work.

The court finds that plaintiff has satisfied his burden in this instance.  A jury could reasonably believe that the Township was motivated not by the desire to provide more coverage at a cheaper price, but by the desire to eliminate plaintiff's position before he began to collect retirement.  A jury could also reasonably find that

17

eliminating plaintiff's position did not serve the stated aim of providing more police coverage in the township. As such, a jury could reasonably conclude that the defendant's stated reasons for the employment decision were not the real reasons. If the jury came to that conclusion, plaintiff would prevail. The court will therefore deny the defendant's motion.

**Conclusion**

For the reasons stated above, the court will deny the defendant's motion for summary judgment in part and grant the motion in part. Trial will go forward on plaintiff's age discrimination claim in the elimination of his police-department position. Plaintiff must convince the jury he should prevail based on indirect evidence. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN P. ZURATT, | : | No. 3:09cv2042 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| NORWEGIAN TOWNSHIP, | : | |
| Defendant | : | |

## ORDER

**AND NOW**, to wit, this 28th day of October 2010, the defendant's motion for summary judgment (Doc. 12) is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims related to defendant's failure to hire him for the Township street crew are hereby **DISMISSED**. Trial shall proceed on plaintiff's claims related to the elimination of the Township police department.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court